IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00136-WJM-BNB

RICHARD J. LYNN,

Plaintiff,

v.

W. COX, SIS Investigator,
J. BOLEY, Unit Manager,
J. CAREY, Disciplinary Hearing Officer,
R. SHANK, Staff Representative,
R. WILEY, Warden, ADX,
B. DAVIS, Warden, ADX,
J. FOX, Associate Warden, ADX,
J. JONES, Associate Warden, ADX,
M. COLLINS, Unit Manager, ADX,
P. RANGEL, Unit Manager, ADX,
A. FENLON, Case Manager,
T. JOHNS, Warden USP-1 Coleman, FL,
R. BURTON, Associate Warden, USP-1 Coleman, FL, and
O. BARAT, Captain, USP-1 Coleman, FL,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on **Defendants' Motion to Dismiss** [Doc. #60, filed 11/23/2011] (the "Motion"). The Motion is brought on behalf of defendants Boley, Burton, Carey, Collins, Davis, Fenlon, Fox, Johns, Rangel, Shank, and Wiley in their individual and official capacities, and defendant Cox in his official capacity. I respectfully RECOMMEND that the Motion be GRANTED.

# I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has

wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

As a preliminary matter, I address the piecemeal entries of appearances on behalf of certain defendants.  At the time the Motion was filed, defense counsel stated that he represented defendants Cox and Wiley in their official capacities, but not in their individual capacities.[1] *Motion*, p. 1, note 1.  Counsel's failure to appear on behalf of defendant Wiley in his individual capacity is puzzling because the BOP accepted service for Wiley [Doc. #28] on August 9, 2011, and Wiley was ordered to answer or otherwise respond to the Complaint [Doc. #49] on or before November 9, 2011.

In addition, defendant Barat was served on February 6, 2012 [Doc. #83].  Under Rule 12(a)(2) and (3), Fed.R.Civ.P., Barat was required to answer or otherwise respond to the Complaint on or before April 6, 2012.  Instead of filing an answer or a motion to dismiss on

---

[1]On May 30, 2012, counsel filed "Defendant Wiley's Joinder of Defendants' Motion to Dismiss" [Doc. #85], wherein Wiley "in his individual capacity hereby joins the other defendants' motion to dismiss."

3

behalf of Barat, counsel for the defendants stated in a footnote to Defendants' Notice of

Supplemental Authority [Doc. #84] that he represents Barat in his official capacity.

Finally, defendant J. Jones has never been served [Doc. #26 and #48].

Although I disapprove of defense counsel's fragmented and improper representation of

the defendants, the plaintiff's claims cannot survive against any of the defendants, regardless of

whether they are represented by counsel.

The plaintiff is currently incarcerated by the Federal Bureau of Prisons ("BOP").  He

filed Plaintiff's Second and Final Amended Prisoner Complaint on June 6, 2011 [Doc. #13] (the

"Complaint").  The Complaint contains the following allegations:

1.   While incarcerated at the United States Penitentiary in Coleman, Florida ("USP-

Coleman"), the plaintiff contacted Florida Senator Bill Nelson concerning "serious legal and

constitutional violations occurring at the prison."  *Complaint*, p. 12, ¶ 18.[2]

2.   On April 4, 2006, defendant Cox, Special Investigative Service, knowingly filed a

false incident report (#1452783) against the plaintiff at the direction of his superiors in

retaliation for the plaintiff contacting Senator Nelson.  Id.  The incident report accused the

plaintiff of planning an escape.  Id. at Ex. C-2.[3]

3.   On June 2, 2006, the plaintiff's attorney was searched by Cox and three others as he

left the facility.  All of the plaintiff's legal documents were taken.  Id.

---

[2]The Complaint is not consecutively paginated.  Therefore, I refer to the page numbers of
the Complaint as they are assigned by the court's docketing system.

[3]The Second Amended Complaint repeatedly refers to exhibits.  There are no exhibits
attached to the Second Amended Complaint; the exhibits are attached to the initial complaint
[Doc. #1].  I cite to the exhibits as if they were attached to the Second Amended Complaint.

4.   On April 4, 2006, defendant Boley, Unit Manager at USP-Coleman, fabricated and falsified documents.  On April 8, 2009, Boley falsely testified at an evidentiary hearing.  Id. at p. 13, ¶ 20.

5.   Defendant Carey, Disciplinary Hearing Officer at USP-Coleman, refused to call any witnesses during the plaintiff's disciplinary hearing on May 17, 2006.  Id. at ¶ 21.  Carey found the plaintiff guilty in spite of the fact that there was no evidence in the record to support a finding of guilt.  Id.

6.   Defendant Shank, Staff Representative at USP-Coleman, refused the plaintiff's requested witnesses at the disciplinary hearing on May 17, 2006.  Id. at ¶ 22.  Shank "gave perjured testimony" at the evidentiary hearing on April 8, 2009.  Id.

7.   Defendant Barat "stopped by plaintiff's SHU cell and stated 'You've caused us a lot of problems around here and the warden wants you outta here.'  Barat had a duty not to be complicit in, and an accomplice in the retributive segregation of plaintiff."  Id. at ¶ 23.

8.   Defendant Burton, Associate Warden at USP-Coleman, "while making his rounds in the SHU stated to plaintiff that 'You've got the Big Man pissed by contacting those Senators and he wants you off his yard.'  Thus, Burton violated his duty to properly oversee that his subordinates [sic] and insure that plaintiff was not lodged in the SHU based upon false charges."  Id. at p. 14, ¶ 24.

9.   Defendant Johns, Warden at USP-Coleman, in retaliation for the plaintiff's complaints to the Senator, was "largely responsible" for the plaintiff's 1,833 days in segregation at USP-Coleman and the plaintiff's transfer to the United States Prison, Administrative Maximum in Florence, Colorado ("ADX").  Id. at ¶ 25.

10.   The plaintiff was transferred to ADX on October 16, 2006, based solely on the incident report.  Id. at p. 15.  He arrived at ADX on November 2, 2006.  Id. at p. 17, ¶ 30.  He was placed on "long term indefinite administrative detention" from November 2, 2006, until October 12, 2010, without any prior opportunity to be heard.  Id. at p. 15.

11.   The restrictions at ADX include 23 to 24 hours of solitary confinement; social isolation; minimal contact with the outside world; monitored mail and media correspondence; non-contact visits; restricted telephone privileges; two 15 minute telephone calls per month as compared to 20 calls of 15 minutes in other facilities; very limited access to the law library; no typewriters as compared to word processors and computers in other facilities; two hour indoor recreation periods two to three times per week; outside recreation periods in small cages; no social programs or interactions; no religious services or programs; very limited property and commissary; hand-cuffing behind the back whenever outside of cell; and food trays passed through door slots.  Id.

12.   Defendant Wiley, Warden at ADX, violated the plaintiff's procedural due process rights from November 2, 2006, until he retired because he denied the plaintiff any meaningful opportunity to be heard while incarcerated at ADX.  Id. at p. 16, ¶ 26.

13.   Defendant Davis, Warden at ADX, replaced Wiley after his retirement and continued denying the plaintiff any meaningful opportunity to be heard.  Id. at p. 17, ¶ 27.

14.   Defendant Fox, Associate Warden at ADX, denied the plaintiff the opportunity to be heard or to be present during any of the "Pseudo J-Unit Reviews" while keeping him in the ADX.  Id. at ¶ 28.

15.   Defendant Jones, Associate Warden at ADX, also denied the plaintiff the opportunity to be heard or to be present during any of the "Pseudo J-Unit Reviews" while keeping him in the ADX.  Id. at ¶ 29.

16.   Defendant Collins, Unit Manager at ADX, placed the plaintiff in the SHU and denied him any meaningful opportunity to be heard.  Id. at pp. 17-18, ¶ 30.

17.   Defendant Rangel, Unit Manager at ADX, replaced Collins and continued the same denial of procedural due process.  Id. at p. 18, ¶ 31.

18.   Defendant Fenlon, Case Manager at ADX, also denied the plaintiff the opportunity to be heard.  Id. at ¶ 32.

On August 30, 2007, the plaintiff submitted to this court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he alleged that his due process rights were violated at the disciplinary hearing held at USP-Coleman on May 17, 2006.  Civil Action No. 07-cv-01856-MSK-KMT, Doc. #2.  After an evidentiary hearing on April 8, 2009, the magistrate judge assigned to the case recommended that the Application be dismissed because the plaintiff's claims lacked merit.  Id. at Doc. #98.  On May 5, 2010, the government filed a motion to dismiss the Application as a result of the expungement of the incident report.  Id. at Doc. #109.  The district judge found that the action was moot and granted the motion to dismiss. Id. at Doc. #112.  The district judge refused to address in a petition under section 2241 the plaintiff's allegations regarding the conditions of his confinement.[4]  Id.

---

[4]I may take judicial notice of these court records in analyzing the defendants' motion to dismiss without converting the motion to dismiss into a motion for summary judgment. "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein."  Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (internal quotations and citations omitted).

The Complaint asserts three claims pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Claim One alleges that defendants Cox, Boley, Carey, Shank, Barat, Burton, and Johns (the "USP-Coleman Defendants") violated the plaintiff's First and Fifth Amendment rights.  Claim Two alleges that defendants Wiley, Davis, Fox, Jones, Collins, Rangel, and Fenlon (the "ADX Defendants") violated the plaintiff's substantive and procedural due process rights.  Claim Three was dismissed as legally frivolous on July 13, 2011 [Doc. #14].  The plaintiff seeks declaratory and injunctive relief.  He also seeks compensatory and punitive damages.[5]  <u>Id.</u> at p. 21.

## III.   ANALYSIS

### A.   Claim One : USP-Coleman Defendants

The defendants assert that the court lacks personal jurisdiction over defendants Boley, Burton, Carey, Cox, Johns, and Shank.  *Motion*, pp. 5-8.  Those defendants were employees at USP-Coleman at all times pertinent to the allegations of the Complaint.  Although defendant Barat, a Captain at USP-Coleman during the relevant time period, has not answered or otherwise responded to the Complaint, I include him in my analysis for purposes of judicial economy.

When a defendant seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction over the defendant.  <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995).  The plaintiff need only make a prima facie showing of facts, however, by affidavit or other evidence, which if true would support the

---

[5]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

exercise of personal jurisdiction.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998).

In a federal question case, as here, the analysis for determining personal jurisdiction has been summarized as follows:

> Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.

Peay v. Bellsouth Medical Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000) (quotations and citations omitted).

In this case, the plaintiff is suing the USP-Coleman Defendants pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  There is no federal statute which potentially confers jurisdiction by authorizing service of process on the defendants. See McChan v. Perry, 229 F.3d 1164, 2000 WL 1234844 (10th Cir. 2000) (holding that section 1983 does not provide for nationwide service of process).[6]  Therefore, the question before the court is whether the exercise of jurisdiction over the USP-Coleman Defendants comports with due process.

When federal legislation does not provide for nationwide service of process, the plaintiff must demonstrate that the defendant is amenable to service of process under the laws of the forum state.  Under Colorado law, personal jurisdiction exists only if the requirements of both the state long-arm statute, section 13-1-124, C.R.S., and due process of law have been satisfied. Doe v. National Medical Servs., 748 F. Supp. 793, 795 (D. Colo. 1990); D & D Fuller CATV

---

[6]Copies of all unpublished opinions cited in this Recommendation are attached.

Constr., Inc. v. Pace, 780 P.2d 520, 523 (Colo. 1989).  The Colorado long-arm statute confers

jurisdiction to the fullest extent consistent with due process of law, however.  Waterval v.

District Court, 620 P.2d 5, 8 (Colo. 1980), cert. denied, 452 U.S. 960 (1981).  Consequently,

because the Colorado long-arm statute imposes no greater limitations than federal due process, I

proceed directly to the constitutional analysis.  See OMI Holdings, 149 F.3d at 1090, citing

Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op., 17 F.3d 1302, 1305 (10th Cir. 1994).

        In federal question cases, the personal jurisdiction requirements flow from the due

process clause of the Fifth Amendment, Peay, 205 F.3d at 1211, which are the same as those in a

Fourteenth Amendment analysis.  Id.  The focus is on protecting an individual's liberty interest

in not being subject to "the binding judgments of a forum with which he has established no

meaningful contacts, ties, or relations."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472

(1985) (quotations and citation omitted).  Due process requires that a defendant have "fair notice

that [his] activities will render [him] liable to suit in a particular forum."  Peay, 205 F.3d at 1211.

        To satisfy due process, minimum contacts must exist between the defendant and the

forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).  The

minimum contacts requirement may be satisfied by a showing of either general jurisdiction or

specific jurisdiction.  Where general jurisdiction is asserted over a non-resident defendant who

has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates the

defendant's "continuous and systematic general business contacts" in the state.  OMI Holdings,

149 F.3d at 1091.  General jurisdiction does not require that the claim be related to the forum-

related contacts.  Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).  Specific

jurisdiction is present where the defendant has purposefully directed his activities at the residents

of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. <u>Soma Medical Int'l v. Standard Chartered Bank</u>, 196 F.3d 1292, 1298 (10th Cir. 1999). If it is established that a defendant's actions created sufficient minimum contacts, the court still must consider whether the exercise of personal jurisdiction over the defendant would offend traditional notions of "fair play and substantial justice." <u>Burger King</u>, 471 U.S. at 476 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). This inquiry requires a determination of whether the exercise of personal jurisdiction over the defendant is reasonable in light of the circumstances surrounding the case. <u>Id.</u>

The plaintiff has not submitted an affidavit or other evidence to support personal jurisdiction over any of the USP-Coleman Defendants. I am aware that a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury. <u>C.D. Mosier v. Maynard</u>, 937 F.2d 1521, 1524 (10th Cir. 1992). The plaintiff's Complaint is sworn under penalty of perjury. However, the Complaint does not contain any allegations to show that the USP-Coleman Defendants had "continuous and systematic general business contacts" in Colorado or that they directed any activities toward a resident of Colorado. To the contrary, the Complaint states that the USP-Coleman Defendants work in Coleman, Florida, and that the actions underlying the plaintiff's claim against them occurred in Florida.[7] Therefore, the plaintiff has not demonstrated the existence of general or specific jurisdiction over the USP-Coleman Defendants.

---

[7]In addition, the plaintiff admits that the decision to transfer him to a Colorado facility was not made by the USP-Coleman defendants. The decision was made by the Southeast Regional Director, R. Holt. *Response*, p. 7.

The plaintiff argues that this court's order authorizing service of process on the defendants means that "there were very strong contacts" between the defendants and Colorado. *Plaintiff's Response to Defendant's Motion to Dismiss* (the "Response"), p. 11.  The court's order for service of process is irrelevant to the issue of personal jurisdiction and does not constitute any finding regarding personal jurisdiction over the USP-Coleman Defendants.

The plaintiff has failed to meet his burden to make a prima facie showing of personal jurisdiction.  See Wenz, 55 F.3d at 1505.  The Motion should be granted insofar as it seeks dismissal of the USP-Coleman Defendants (Barat, Boley, Burton, Carey, Cox, Johns, and Shank) for lack of personal jurisdiction.

## B.   Claim Two: ADX Defendants

### 1.   Official Capacity Claims

Claim Two alleges that the ADX Defendants violated the plaintiff's substantive and procedural due process rights when he was placed in "highly restrictive conditions of indefinite atypical and significant detention at ADX" without an opportunity to be heard during his four year stay. *Complaint*, pp. 15-18.  Claim Two is brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

The defendants assert that sovereign immunity prohibits subject matter jurisdiction over all of the defendants in their official capacities for damages. *Motion*, p. 22.  Because I have recommended that the USP-Coleman Defendants be dismissed for lack of personal jurisdiction, I analyze this issue only insofar as it concerns the ADX Defendants.  The defendants further assert

that Claim Two must be dismissed as moot insofar as it seeks injunctive relief against the ADX

Defendants in their official capacities.[8] Id. at pp. 8-11.

The defendants' first argument is a facial attack on the Complaint.  Therefore, I must

accept the allegations of the Complaint as true.  The second argument is a factual attack on the

Complaint, and I have discretion to allow affidavits and other evidence to resolve it.  Holt, 46

F.3d at 1003.

It is a well-established principle that "[a]s a sovereign, the United States 'is immune from

suit save as it consents to be sued and the terms of its consent to be sued in any court define the

court's jurisdiction to entertain the suit.'" Lee v. United States, 980 F.2d 1337, 1340 (10th Cir.

1992) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Bivens does not waive

the sovereign immunity of federal agencies.  Federal Deposit Insurance Corp. v. Meyer, 510 U.S.

471, 484-86 (1994); Bivens, 403 U.S. at 410.  The BOP is a federal agency.

Suits against officers in their official capacities are suits against the entity of which the

officer is an agent.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  The ADX Defendants

are agents of the BOP, and suits against them in their official capacities are suits against the

BOP.  Because sovereign immunity is a jurisdictional bar to suit against the BOP, Claim Two is

barred against the ADX Defendants in their official capacities for money damages.

Sovereign immunity is not a bar to a federal prisoner's claims for injunctive relief.

Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir.2005).  In Simmat, the circuit

court acknowledged that 5 U.S.C. § 702 waives sovereign immunity in most suits for

---

[8]Although defendant J. Jones, Associate Warden at ADX, has not been served with
process, I include him in my analysis for purposes of judicial economy.

nonmonetary relief.  However, the plaintiff does not bring his claims for injunctive relief under section 702.  *Complaint*, p. 8.

Even if the plaintiff had asserted his claims for injunctive relief under section 702, his claims for injunctive and declaratory relief are both moot.  Mootness is described by the Tenth Circuit as follows:

> Article III mootness is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).  A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.  Thus, to be cognizable, a suit must be a real and specific controversy admitting of specific relief through a decree of a conclusive character.  *If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed.*

Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997) (emphasis added) (internal citations omitted).

Mootness implicates the court's subject matter jurisdiction and may be raised at any stage of the proceedings.  Kennedy v. Lubar, 273 F.3d 1293, 1301-02 (10th Cir. 2001).  The Supreme Court has stated:

> Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.  To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.  Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.  This case-or-controversy requirement subsists through all stages of federal judicial

> proceedings, trial and appellate.  To sustain . . . jurisdiction in the
> present case, it is not enough that a dispute was very much alive
> when suit was filed . . . .  The parties must continue to have a
> personal stake in the outcome of the lawsuit.

Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990) (internal quotations and citations

omitted).

"When a prisoner files suit against prison officials who work in the institution in which

he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful

conduct by those officials, and then that prisoner is subsequently transferred to another prison or

released from the prison system, courts are presented with a question of possible mootness."

Jordan v. Sosa, 654 F.3d 1012, 1027 (10th Cir. 2011).  Courts have routinely dismissed claims

where a prisoner's transfer "signals the end of the alleged deprivation of his constitutional

rights" and "an entry of equitable relief in his favor would amount to nothing more than a

declaration that he was wronged, and would have no effect on the defendants' behavior towards

him."  Id. at 1027-28 (internal quotations and citations omitted).

Here, the plaintiff seeks "[a] declaration that the acts and omissions described herein

violated the plaintiff's rights under the Constitution and laws of the United States."  *Complaint*,

p. 21.  The defendants provide evidence that the plaintiff was transferred from ADX to the

United States Penitentiary in Florence, Colorado, on August 12, 2010.  *Motion*, Ex. A, ¶ 1.  In

addition, the plaintiff states that he was transferred to USP-Coleman on November 29, 2011.

*Response*, p. 1.  Entry of declaratory relief in the plaintiff's favor would amount to nothing more

than a declaration that the plaintiff was wronged, and it would have no effect on the ADX

Defendants' behavior toward him.  Therefore, the plaintiff's request for declaratory relief against

the ADX Defendants is moot and must be dismissed for lack of subject matter jurisdiction.

15

The plaintiff also seeks injunctive relief in the form of an order to the defendants "to transfer plaintiff to his '**PRIOR STATUS**,' in a less restrictive, normal U.S. Penitentiary, within 250 miles of his family in Sarasota, Florida, specifically USP II Coleman." *Complaint*, p. 21 (emphasis in original).  The plaintiff's claim for injunctive relief is moot because he cannot obtain any relief from the ADX Defendants; he already has been transferred to USP-Coleman. Jordan v. Sosa, 654 F.3d at 1029-30.

The plaintiff argues that his placement in ADX "continues to affect the conditions of his confinement" because even though he has been transferred out of ADX, "he remains a maximum security-high max and is on a high accountability card which requires him to check in with a staff member/detail supervisor every two (2) hours based on his prior ADX status." *Plaintiff's Response to Defendant's* [sic] *Motion to Dismiss* [Doc. #81] (the "Response"), p. 13 (internal quotations omitted).  The plaintiff's current difficulties notwithstanding, the equitable relief he seeks cannot be provided by the ADX Defendants.

The Motion should be granted insofar as it seeks dismissal of Claim Two against the ADX defendants in their official capacities for damages and equitable relief.

## 2.  Individual Capacity Claims

### a.  Availability of Bivens Remedy

The defendants assert that the plaintiff lacks a Bivens remedy for Claim Two.  *Motion*, pp. 11-12.  While it is true that the Supreme Court has declined to extend Bivens beyond a remedy for violations of the Fourth Amendment, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause, Correctional Services Corp. v. Malesko, 534 U.S. 61, 66-68 (2001), the Tenth Circuit

has repeatedly recognized due process claims brought pursuant to Bivens. E.g. Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639 (10th Cir. July 25, 2006) (affirming the district court's judgment against a federal prisoner who brought a Bivens action asserting that the conditions and duration of his nearly five year administrative detention in ADX violated his due process rights). However, the circuit court has never addressed the issue directly. Because Claim Two fails to allege a violation of the plaintiff's constitutional rights, I decline to determine whether Bivens would provide a remedy for him.

### b.   Failure to State a Claim upon Which Relief Can Be Granted

The Fifth Amendment guarantees due process when a person may be deprived of life, liberty, or property. U.S. Const. amend. V. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997). Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Nevertheless, the state or federal government "may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483 (1995).[9] A prisoner's liberty interests are "generally limited to freedom from restraint which,

---

[9]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the

while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84.

The following considerations are relevant to the inquiry of what constitutes an atypical and significant hardship: (a) whether the conditions of the plaintiff's confinement relate to and further a legitimate penological interest such as safety or rehabilitation; (b) whether the conditions are extreme; (c) whether placement in the conditions increases the duration of the plaintiff's confinement; and (d) whether placement in the conditions is indeterminate. Estate of Dimarco v. Wyo. Dept. of Corr. Div. of Prisons, 473 F.3d 1334, 1342 (10th Cir. 2007).

In Wilkinson, the Supreme Court found that a combination of factors rose to the level of atypical and significant hardship at Ohio's Supermax facility, the Ohio State Penitentiary ("OSP"):

> In OSP almost every aspect of an inmate's life is controlled and monitored.  Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day.  A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline.  During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation.  In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates.  All meals are taken alone in the inmate's cell instead of in a common eating area.  Opportunities for visitation are rare and in all events are conducted through glass walls.  It is

---

due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976), and Wolff v. McDonnell, 418 U.S. 539 (1974).  Those principles focus on the nature of the deprivation instead of the language of a particular regulation.  Sandin, 515 U.S. at 481.

> fair to say OSP inmates are deprived of almost any environmental
> or sensory stimuli and of almost all human contact.
>
> Aside from the severity of the conditions, placement at OSP is for
> an indefinite period of time, limited only by an inmate's sentence.
> For an inmate serving a life sentence, there is no indication how
> long he may be incarcerated at OSP once assigned there. Inmates
> otherwise eligible for parole lose their eligibility while
> incarcerated at OSP.

209 U.S. at 213-14 (internal quotations and citations omitted).

The Court found a liberty interest in avoiding placement at OSP:

> Save perhaps for the especially severe limitations on all human
> contact, these conditions likely would apply to most solitary
> confinement facilities, but here there are two added components.
> First is the duration. Unlike the 30-day placement in Sandin,
> placement at OSP is indefinite and, after an initial 30-day review,
> is reviewed just annually. Second is that placement disqualifies an
> otherwise eligible inmate for parole consideration. While any of
> these conditions standing alone might not be sufficient to create a
> liberty interest, taken together they impose an atypical and
> significant hardship within the correctional context. It follows that
> respondents have a liberty interest in avoiding assignment to OSP.

Id. at 224 (internal quotations and citations omitted).

In Jordan v. Federal Bureau of Prisons, the Tenth Circuit applied the principles set forth in Wilkinson to an inmate's conditions of confinement at ADX. The court determined that the plaintiff, who was held in administrative detention at ADX for five years while being investigated for a murder, did not suffer atypical and significant hardship. The undisputed material facts demonstrated that all inmates in administrative maximum confinement were provided access to "the commissary, institution programming, mental health and medical services, leisure and law libraries, five hours a week recreation, a hobby craft, telephone, correspondence, and visitors." Id. at 644, 648-50. In addition, they had "opportunities to gain

employment as a unit orderly; access to legal assistance from another inmate; and to interact with a case manager, unit counselor, unit manager, custody staff, and department heads." Id. Although they are housed "in single cells and cannot move about as in an open population facility, they are offered the same programs and afforded the same privileges as inmates in the general population, except that administrative detention inmates: 1) are allowed only one social call per month, while general population inmates are allowed two per month; and 2) do not receive the twelve hours recreation time general population inmates on group recreation status receive, but receive the same five hours of individual recreation that general population inmates on single recreation status receive." Id.

The court recognized that Wilkinson was instructive, but was "not dispositive here, as the conditions of Mr. Jordan's administrative detention were obviously not as onerous, given 1) he admittedly had frequent contact with staff; 2) the length of his sentence was not affected by the administrative detention; and 3) his confinement was not indefinite but instead limited to the duration of the pending murder investigation." Id. at 652.

Guided by Wilkinson, Dimarco, and Jordan v. Federal Bureau of Prisons, I look to the Complaint's allegations to determine whether it is plausible that the conditions and restrictions of the plaintiff's confinement in ADX administrative detention from November 2, 2006, until October 12, 2010, imposed an atypical and significant hardship on the plaintiff when compared to the normal incidents of prison life and thereby created an enforceable liberty interest in avoiding such conditions and restrictions.

The plaintiff describes the conditions of administrative detention as follows: 23 to 24 hour solitary confinement; social isolation; minimal contact with the outside world; monitored

20

mail and media correspondence; non-contact visits; restricted telephone privileges; two 15

minute telephone calls per month as compared to 20 calls of 15 minutes in other facilities; very

limited access to the law library; no typewriters as compared to word processors and computers

in other facilities; two hour indoor recreation periods two to three times per week; outside

recreation periods in small cages; no social programs or interactions; no religious services or

programs; very limited property and commissary; hand-cuffing behind the back whenever

outside of cell; and food trays passed through door slots. *Complaint*, p. 15. The plaintiff admits

that he had access to closed-circuit educational programs, including "Spanish American War,"

"Parenting I and II," "World of Byzantium," and "Peloponnesian War I and II." *Response*, p. 9.

In addition, he had access to sufficient legal resources to submit a petition for a writ of habeas

corpus and numerous related filings from August 2007 until May 2010--at a time when he was in

administrative detention at ADX. Civil Action No. 07-cv-01856-MSK-KMT.[10]

The plaintiff does not contend that his placement in administrative detention at ADX

affected his eligibility for parole. To the contrary, he states that he is serving a life sentence.

*Response*, p. 5.

Moreover, the Complaint does not contain any allegations to create a reasonable

inference that the plaintiff's placement in administrative detention was for an indeterminate

period of time. The plaintiff admits that he received periodic reviews regarding his eligibility to

progress through the ADX step-down program. *Complaint*, p. 16 and Exs. G-1 - G-5 [Doc. #1,

pp. 95-99; Doc. #1-1, p. 12]. The reviews were conducted on November 19, 2007; March 3,

---

[10]The plaintiff also appeared via video camera in Civil Action No. 07-cv-01856-MSK-KMT at an evidentiary hearing on July 22, 2009, and at a non-evidentiary hearing on April 15, 2010. Id. at Docs. #98, #99, and #107.

2008; February 24, 2009; July 8, 2009; and January 14, 2010.  Id.; *Response*, pp. 8-9.  In refusing to place the plaintiff in the step-down program, the Associate Wardens consistently stated that the factors which led to the plaintiff's placement at ADX had not been sufficiently mitigated to indicate that he could function successfully in a less restrictive unit without posing a risk to the internal security at ADX and to the safety of staff, inmates, and the public. *Complaint*, Exs. G-1 - G-5 [Doc. #1, pp. 95-99; Doc. #1-1, p. 12].  The plaintiff had the opportunity to appeal each of the decisions through the BOP's administrative remedy process. Id.  The plaintiff also admits that after the incident report was expunged, he was transferred out of ADX administrative detention.[11]  *Complaint*, p. 11.  Thus, the plaintiff's placement in ADX administrative detention was not indeterminate.

The plaintiff asserts that he was placed in administrative detention at ADX based on the incident report written at USP-Coleman which accused him of planning an escape.  *Complaint*, pp. 10-11, ¶ 12; p. 15.  The periodic reviews state, and the plaintiff does not dispute, that the plaintiff was kept in administrative detention because he was deemed a security and  safety risk.[12]  Construing all reasonable inferences in favor of the plaintiff, the ADX Defendants kept the plaintiff in administrative detention for security and safety reasons based on a disciplinary conviction for planning an escape.  Although the incident report was later expunged, *id.* at p. 11,

---

[11]The plaintiff further alleges that "[t]he Court ordered plaintiff transferred, but defendant's [sic] did not comply with the order for (160) days."  However, the record in Civil Action No. 07-cv-01856-MSK-KMT does not reflect that the court ordered the plaintiff to be transferred.  To the contrary, the plaintiff's Application was dismissed as moot and his motion for a preliminary injunction was denied.  Civil Action No. 07-cv-01856-MSK-KMT, Doc. #112.

[12]Although the plaintiff vigorously disputes the basis for the USP-Coleman conviction, it is clear that he was being held in administrative detention because of the conviction.

the ADX Defendants had a legitimate penological reason for keeping the plaintiff in administrative detention during the time in question.

Considering all of the plaintiff's allegations, it is not plausible that the plaintiff's placement in ADX administrative detention imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life.  The conditions faced by the plaintiff in the ADX administrative detention were no more burdensome than conditions faced by other inmates in cases where courts have ruled that there was no due process violation.  Dimarco, 473 F.3d at 1343 (stating that although the plaintiff's conditions of protective confinement were "admittedly spartan," they were not atypical because she had access to the basic essentials of life, and she was not entitled to "every type of program available to other inmates, ranging from work to recreation"); Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639 (finding no liberty interest in conditions imposed during five-year administrative segregation confinement at ADX); Georgacarakos v. Wiley, Civil Action No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *11-13 (D. Colo. March 30, 2010) (finding no liberty interest in conditions imposed in the ADX General Population); Rezaq v. Nalley, ___ F.3d ____, App. Case Nos. 11-069 and 11-1072, 2012 WL 1372151 (10th Cir. April 20, 2012) (no liberty interest in avoiding transfer without due process to ADX; extreme conditions in administrative segregation do not, on their own, constitute an atypical and significant hardship).

Because I find that it is not plausible that the plaintiff's confinement in ADX administrative detention implicates a liberty interest, I do not reach the plaintiff's claim that he did not receive adequate process while confined in ADX administrative detention.  The Motion

should be granted insofar as it seeks dismissal of Claim Two against the ADX Defendants in their individual capacities.

## IV.   CONCLUSION

I respectfully RECOMMEND:

1.   The Motion be GRANTED, and the Complaint be DISMISSED in its entirety; and

2.   The court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith ; deny *in forma pauperis* status for the purpose of appeal; and caution the plaintiff that if he files a notice of appeal, he must pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed.R.App.P. 24.[13]

Dated June 4, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[13]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).